IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ANTWAN HORNBUCKLE,           :
                             :
        Movant/Defendant,    :
                             :
    v.                       :      Civ. Act. No. 11-1156-LPS
                             :      Cr. Act. No. 09-50-LPS
                             :
UNITED STATES OF AMERICA,    :
                             :
        Respondent/Plaintiff.:

---

Antwan Hornbuckle, *Pro se* Movant.

Jamie McCall, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for Respondent.

---

# MEMORANDUM OPINION[1]

August 21, 2015
Wilmington, Delaware

---

[1]This case was originally assigned to the Honorable Joseph J. Farnan, Jr., and was re-assigned to the undersigned's docket on August 17, 2010.

_[signature]_
STARK, U.S. District Judge:

## I. INTRODUCTION

Antwan Hornbuckle ("Movant") filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 and a Supplemental Memorandum raising additional claims (hereinafter referred to as "§ 2255 Motion"). (D.I. 51; D.I. 56) The United States Government ("Respondent") filed an Answer in Opposition (D.I. 62), to which Movant filed a Reply (D.I. 63). For the reasons discussed, the Court will deny Movant's § 2255 Motion without holding an evidentiary hearing.

## II. PROCEDURAL AND FACTUAL BACKGROUND

As summarized by the Third Circuit, the facts leading to Movant's conviction are as follows:

> [Movant's] residence was the subject of a police raid in early 2009. At the start of the raid, [Movant] emerged from his bedroom and was taken into custody. A search of his person uncovered a plastic bag containing fifteen grams of crack cocaine. A search of the bedroom from which he emerged revealed, among other drug trafficking paraphernalia, a blue plastic tub that contained several plastic bags containing 420 grams of crack cocaine as well as a loaded handgun. The plastic bags of crack cocaine in the tub were identical to the bag found on [Movant]. [Movant] maintains that the handgun and the drugs in the tub were being held for another person (whom the Government was later made aware of through [Movant's] cooperation).

*United States v. Hornbuckle*, 427 F. App'x 172, 173-74 (3d Cir. 2011). A search of the bedroom from which Movant was seen exiting also uncovered a clear plastic bag containing approximately seven grams of crack cocaine in an Xenadrine bottle, and another clear plastic bag containing fifteen grams of crack cocaine in a dresser drawer. (D.I. 62 at 3) In addition, the police found three digital scales with plastic baggies on top of them in the closet, and a family court document with Movant's name and address on the dresser. *Id.* at 4. The officers observed only men's clothing and effects in the bedroom. *Id.*

On April 28, 2009, a Federal grand jury returned a two count Indictment against Movant, charging him with possession with intent to distribute more than fifty grams of cocaine base, a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and possession of a firearm in furtherance of a drug trafficking crime, a violation of 18 U.S.C. § 924(c)(1)(A). (D.I. 2) However, as part of a Plea Agreement Movant entered into with the Government on December 17, 2009, Movant waived the Indictment and entered a plea of guilty to a two count Information charging him with possession with intent to distribute five grams or more of cocaine base, a violation of 18 U.S.C. § 841(a)(1) and (b)(1)(B) ("Count One"), and possession of a firearm in furtherance of a drug trafficking crime, a violation of 18 U.S.C. § 924(c)(1)(A) ("Count Two"). (D.I. 23; D.I. 24; D.I. 25)

Prior to sentencing, and although represented by counsel, Movant filed a *pro se* motion to withdraw his guilty plea. (D.I. 36) Two weeks later, this time acting through counsel, Movant withdrew his motion to withdraw his guilty plea. (D.I. 39)

On August 24, 2010, the undersigned sentenced Movant to a total of 120 months of imprisonment (consisting of two consecutive mandatory minimum sixty month sentences), followed by five years of supervised release. (D.I. 43) Pursuant to the Plea Agreement, the Government filed a motion to dismiss the Indictment, which the Court granted. (D.I. 42; D.I. 45)

Movant appealed, and his conviction and sentence were affirmed by Court of Appeals for the Third Circuit on May 12, 2011. *See United States v. Hornbuckle*, 427 F. App'x 172 (3d Cir. 2011). On October 3, 2011, the Supreme Court denied Movant's Petition for Writ of Certiorari. *Hornbuckle v. United States*, 132 S.Ct. 353 (2011).

### III. DISCUSSION

Movant's timely filed § 2255 Motion asserts the following four grounds for relief: (1) defense counsel provided ineffective assistance during the plea process by improperly advising Movant

2

about the § 924(c) charge, thereby rendering his guilty plea invalid; (2) defense counsel provided ineffective assistance by failing to properly investigate, research, and argue the law regarding the § 924(c) charge; (3) defense counsel provided ineffective assistance by failing to assist Movant withdraw his plea prior to sentencing; and (4) Movant's sentence should be reduced pursuant to the Fair Sentencing Act of 2010's ("FSA") new statutory thresholds for minimum mandatory sentences.

### A. Ineffective Assistance of Counsel Claims

Movant has properly raised his ineffective assistance of counsel allegations in a § 2255 motion. *See Massaro v. United States*, 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, the movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.* Under the second *Strickland* prong, the movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *See id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). In the context of a guilty plea, *Strickland*'s prejudice prong is satisfied by demonstrating that, but for counsel's error, there is a reasonable probability the movant would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced. *See Strickland*, 466 U.S. at 668. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id.* at 689.

3

### 1. Claim One: Ineffective Assistance With Respect to the § 924(c) Charge Rendered Movant's Guilty Plea Invalid

In Claim One, Movant contends that defense counsel erred in advising him to enter a guilty plea to the § 924(c) charge (Count Two), and that this erroneous advice rendered his guilty plea involuntary and unknowing. Movant asserts two arguments in support: (1) counsel improperly advised him that there was sufficient evidence to satisfy the "in furtherance of" element of the § 924(c) charge even though he did not own the gun found in the blue plastic tub; and (2) the Plea Agreement was modified during the plea colloquy when defense counsel clarified that Movant was merely holding the gun for someone else, thereby demonstrating that he did not enter a guilty plea to the § 924(c) charge. For the following reasons, the Court concludes that both of these arguments are unavailing.

#### a. Erroneous advice regarding the § 924(c) charge

When the sufficiency of the evidence is challenged, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In order to establish a violation of 18 U.S.C. § 924(c), the following elements must be proven beyond a reasonable doubt: (1) the defendant committed the underlying drug trafficking crime; (2) the defendant knowingly possessed a firearm; and (3) the possession was in furtherance of the underlying trafficking crime. *See United States v. Bobb*, 471 F.3d 491, 496 (3d Cir. 2006). Here, because Movant does not challenge his guilty plea to Count One (possession of crack cocaine with intent to distribute), there is no need to discuss the sufficiency of the evidence with respect to the underlying drug trafficking crime. Rather, based on Movant's assertions, the Court will focus on whether counsel reasonably advised Movant a jury could find there was sufficient

evidence establishing Movant's knowing possession of the gun and that the possession was in furtherance of the underlying drug trafficking crime.

With respect to the "knowing possession" element, it is well-settled that § 924(c) may be violated through the actual or constructive possession of a firearm. *See, e.g., United States v. Introcaso*, 506 F.3d 260, 270 (3d Cir. 2007) (conviction for possession may be established by actual or constructive possession); *United States v. Rogers*, 41 F.3d 25, 30 (1st Cir. 1994) (explaining that "ownership alone does not establish possession"). "Constructive possession occurs when a person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." *United States v. Benjamin*, 711 F.3d 371, 376 (3d Cir. 2013) (internal citations omitted). "Constructive possession necessarily requires both dominion and control over an object and knowledge of that object's existence," *United States v. Cunningham*, 517 F.3d 175, 178 (3d Cir. 2008), and may be proved by circumstantial evidence, *see Bobb*, 471 F.3d at 497.

In turn, § 924(c)'s "in furtherance of" element is satisfied only if the defendant's "possession of the firearm advanced or helped forward a drug trafficking crime." *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004). The following non-exclusive list of eight factors must be considered when determining if the evidence demonstrates a sufficient nexus between the possession of the gun and the predicate drug trafficking crime: (1) the type of weapon possessed; (2) the nature of the drug activity in question; (3) the accessibility to the defendant of the firearm; (4) whether the weapon is stolen; (5) whether the defendant possessed the gun legally or in an illicit manner; (6) whether the gun contains ammunition; (7) the proximity of the drugs or drug profits; and (8) the circumstances under which the gun is discovered. *See id.* Significantly, there can be sufficient evidence to support

5

a conviction under § 924(c) even if some of the eight *Sparrow* factors are not satisfied. *See United States v. Walker*, 657 F.3d 160, 173 (3d Cir. 2011).

In this case, defense counsel explains that she had "numerous discussions with [Movant] regarding the elements of the § 924(c) charge," during which she explained to Movant that he could proceed to trial or enter a guilty plea, and that the decision with respect to these options was his alone. (D.I. 62-1 at 3-4) Defense counsel also provides the following details about her conversations with Movant:

> 5. From the outset, [Movant] expressed concern over the elements of the § 924(c) charge, and he inquired as to whether he could be convicted of that charge if he was merely holding the firearm for someone else, as he stated he was doing. In response to his inquiries, and prior to his pleading guilty in this case, I again explained the elements of the § 924(c) charge to him. []
>
> 6. In explaining the elements of the § 924(c) charge, I informed [Movant] that, in the absence of additional facts, he could not be convicted of the § 924(c) charge if a jury believed that he was merely holding the firearm for someone else. I explained to him that, to be convicted under § 924(c), one's possession of the firearm must advance or promote the drug trafficking crime. Further, *I explained to him that there were facts present in this case from which a jury could likely determine that he was guilty of a § 924(c) violation. First, I reminded him that even if we could establish that he did not possess with intent to distribute the four hundred twenty (420) grams of crack cocaine found in his bedroom in the plastic tub with the firearm, that he had admitted that he possessed with intent to distribute the fifteen (15) grams of crack cocaine located in his bedroom dresser drawer, in close proximity to where the firearm was located.* Second, I explained to him that if we went to trial on the § 924(c) charge, the government would most likely call an expert witness to testify regarding the manner in which drug-traffickers commonly possess handguns in order to protect illegal drugs and drug proceeds. *Given his admission to possessing with intent to distribute the drugs found in his dresser drawer, his access to the firearm found in the same bedroom in very close proximity to the drugs in the dresser drawer, and the anticipated testimony from the government's expert witness, I advised Movant that there were enough facts present where a jury could find him guilty of the*

6

> *§ 924(c) charge. I explained to [Movant] that in cases where a firearm is held in close proximity to drugs, and where the firearm is readily accessible to the person possessing the drugs, courts have upheld convictions for violations of § 924(c). I further explained to [Movant] that because the government was offering him a plea to a two-count felony information that subjected him to a ten (10) year mandatory minimum, as opposed to the fifteen (15) year mandatory minimum he was facing if convicted after a trial on all the charges in the Indictment, that it was my opinion that he should accept the government's plea offer and plead guilty to the two counts outlined in the Information. However, I again advised him that the final decision as to whether or not to plead guilty was his.*
>
> [7.] While [Movant] expressed his disagreement on several occasions as to whether he was guilty of the § 924(c) charge, at no time after I explained to him the elements of the § 924(c) charge, did [Movant] express to me that he did not understand the § 924(c) elements. []

(D.I. 62-1 at 4-5) (emphasis added) These excerpts show that counsel was aware of Movant's belief that his lack of "ownership" or actual possession of the gun affected the ability to convict him under § 924(c), and that counsel properly advised Movant about the evidence needed to satisfy the "in furtherance of" element of the § 924(c) offense.

Second, Movant's contention that he was merely holding the gun for someone else does not demonstrate that counsel erred in advising him that a jury could reasonably conclude that there was sufficient evidence to support his § 924(c) conviction. Notably, Movant's conviction for violating § 924(c) rested on a theory of constructive possession,[2] and Movant affirmatively indicated during the plea colloquy that he understood Judge Farnan's explanation regarding the difference between possession and ownership. (D.I. 47 at 9) Moreover, at no time during the plea colloquy, sentencing hearing, or this proceeding has Movant asserted that he was unaware of the gun's presence in the blue plastic tub or that he did not exercise control over the gun while it was in his bedroom; rather,

---

[2]*See Hornbuckle*, 427 F. App'x at 177.

7

he has consistently asserted only that he did not own the gun and/or that he did not have "actual physical possession" of the gun when arrested. In fact, during the plea colloquy, Movant affirmatively indicated that he had been given the drugs found on his person and in his dresser "in exchange for holding these drugs and gun [found in the plastic tub] for someone else." (D.I. 47 at 12) This statement demonstrates Movant's knowledge of the gun's presence in the bedroom. Additionally, Movant was arrested after he was seen exiting the same bedroom where the gun was found; the gun was loaded (or, as Movant asserts, it was unloaded but stored with bullets); the packaging of the crack cocaine found in the tub was identical to the packaging of the crack cocaine found on Movant's person; a family court document with Movant's name and address was found in the bedroom; the bedroom contained only men's clothing; and Movant affirmatively acknowledged that he intended to sell the drugs that were found on his person and in his dresser. (D.I. 47 at 11) Viewed together, this evidence was sufficient to demonstrate that Movant had dominion or control over the bedroom where the gun was found, as well as over the gun itself. Thus, after viewing the foregoing evidence in a light most favorable to the Government, and as found by both Judge Farnan and the Third Circuit on direct appeal, the Court concludes a rational trier of fact could have found that Movant constructively possessed the gun in the blue plastic tub even though he was not its owner.

Third, Movant's contention that he never intended to "use the gun to further any drug transactions or to harm anybody" (D.I. 56 at 7) does not demonstrate that there was insufficient evidence to satisfy the "in furtherance of" element of the § 924(c) charge. The relevant issue under *Sparrow* is whether the evidence established a nexus between the gun found in the bedroom and Movant's drug trafficking operation found in that same room. Applying the *Sparrow* factors to this case demonstrates that there was a sufficient nexus. During the plea colloquy, Movant admitted that

8

he possessed the additional fifteen grams of crack found in his dresser. (D.I. 47 at 8, 12) In turn, the loaded gun (or, as Movant asserts, an unloaded gun with bullets stored with it) was found in Movant's bedroom in very close proximity to the drugs in the dresser drawer; the bedroom contained equipment for street sale of the drugs; and Movant admitted that he intended to sell the drugs found in his dresser drawer and on his person. Movant also affirmatively indicated that he was given the drugs he intended to sell *because* he agreed to hold the gun (and the other drugs) for someone else. (D.I. 47 at 12) Hence, even if Movant was only "holding" the gun and the drugs in the blue plastic tub for someone else, a rational trier of fact could have determined that all of the aforementioned evidence taken together was sufficient to show that Movant's constructive possession of the gun advanced his illegal drug activity. *See United States v. Ramirez*, 249 F. App'x 277, 280 (3d Cir. 2007) (affirming defendant's § 924(c) conviction based on proximity of firearm found in defendant's home to drug trafficking paraphernalia, and despite defendant's assertion he owned handguns for self-protection and sporting purposes).

Finally, the final ten year sentence defense counsel negotiated in the Plea Agreement was five years lower than the total fifteen year minimum mandatory sentence Movant would have faced had he proceeded to trial on the charges asserted in the Indictment.[3]

Given all of these circumstances, the Court concludes that there was sufficient evidence to support Movant's § 924(c) conviction. As such, defense counsel's advice did not constitute ineffective assistance of counsel.

---

[3] Count One of the Indictment charged Movant with possessing over fifty grams of cocaine base with the intent to deliver. In contrast, Count One of the Information charged Movant only with possessing more than five grams of cocaine base with the intent to deliver. Pursuant to the Plea Agreement, Movant waived Indictment and pled guilty to the charges in the Information.

9

### b. Defense counsel's clarification amended the plea agreement

Relatedly, Movant alleges that the Plea Agreement was modified during the plea colloquy when defense counsel clarified that Movant did not own the gun found in the blue plastic tub, such that everyone, including the Court, knew Movant was only pleading guilty to the drug possession charge alleged in Count One. The Court rejects this argument for two reasons. First, as previously explained, even if Movant was only "holding" the gun for someone else, there was sufficient evidence that he constructively possessed the gun in furtherance of the predicate drug trafficking charge asserted in Count One of the Information. In turn, as set forth below, the transcript of the plea colloquy demonstrates that Movant knowingly, voluntarily, and intelligently entered a guilty plea to both Counts of the Information.

At the beginning of the plea colloquy, Judge Farnan read the charges set forth in the Information, and confirmed that Movant had received an opportunity to review the Waiver of Indictment with defense counsel and that Movant had been advised of the nature of the charges and still wished to waive indictment. (D.I. 47 at 5-7) Judge Farnan then asked Movant if he had read and reviewed the charges in the Information and confirmed that Movant was satisfied with the explanation of the charges against him. (*Id.* at 7) Judge Farnan also asked Movant why he was guilty and answered Movant's questions regarding the legal concept of possession. (*Id.* at 8-10) Thereafter, the Government set forth the factual basis for the plea, and defense counsel provided the "clarification" of facts that Movant now contends amended his plea agreement. (*Id.* at 10-12)

However, after defense counsel "clarified" the facts, Judge Farnan reviewed with Movant his understanding that he was pleading guilty to both Counts contained in the written Plea Agreement. (*Id.* at 12-13) Notably, Paragraph Five of the Memorandum of Plea Agreement states:

> 5. [Movant] understands that if there were a trial, the United
> States would have to prove the following elements with respect to

> Count Two of the Information: (1) that he committed the crime of
> possession with intent to distribute five grams or more of a mixture
> and substance containing a detectable amount of cocaine base, as
> charged at Count One of the Information; and (2) that *he
> knowingly possessed a firearm in furtherance of his crime.*

(D.I. 25) (emphasis added) After further discussion during the plea colloquy, Judge Farnan stated:

> You understand that if I accept these guilty pleas *to Counts I and II
> of the Information*, that you'll be waiving your right to trial by jury []
> and the only matter left in your case will be sentencing?

(D.I. 47 at 17) (emphasis added) Movant responded affirmatively. Judge Farnan then asked Movant if he had "any questions at all," and Movant answered, "Not at this time." (*Id.*) In conclusion, Judge Farnan stated,

> I further find that you're entering these pleas voluntarily and that
> there's a basis in fact for you to plead guilty because you've admitted
> you['re] guilty and the facts that support a guilty verdict and *you
> accepted with modification as presented by [defense counsel],
> the government's proffer of evidence,* and for all of these reasons
> I'm going to accept your pleas and *adjudge you guilty of Counts I
> and II.*

(*Id.* at 18) (emphasis added)

It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The excerpts above from the December 17, 2009 plea colloquy contain Movant's clear and explicit statements that he had reviewed the Plea Agreement with defense counsel, that nobody forced him to plead guilty, that he understood he was pleading guilty to **both** Counts of the Information, and that he was entering into the Plea Agreement of his own free will. Significantly, after defense counsel's "clarification," Judge Farnan explicitly stated that he was accepting Movant's guilty pleas to Counts One and Two, and Movant never questioned the

11

reference to both Counts. This record demonstrates that, even with defense counsel's "clarification," Movant understood and agreed he was pleading guilty to Counts One and Two.

In short, Movant's unsupported allegations in this proceeding fail to provide compelling evidence as to why the statements he made during the plea colloquy should not be presumptively accepted as true. Movant's contention that he believed the Plea Agreement had been amended during the plea colloquy is also rebutted by the statement in defense counsel's affidavit that, "[A]fter his guilty plea to the § 924(c) charge, [Movant] never expressed to me, as he argues in his § 2255 Motion, that he believed that he had not in fact plead guilty to the § 924(c) charge." (D.I. 62-1 at 5) As such, the Court rejects as Movant's contention that he believed he was only pleading guilty to Count One, and concludes that Movant's guilty plea to the § 924(c) charge was voluntary, knowing, and intelligent.

Accordingly, the Court will deny Claim One in its entirety.

### 2. Claim Two: Defense Counsel Failed to Properly Investigate, Research, and Argue the Law Regarding the § 924(c) Charge

In his next Claim, Movant contends that defense counsel failed to properly investigate, research, and argue the law regarding the § 924(c) charge as it applied to Movant's case. As previously discussed, defense counsel's affidavit sets forth a thorough and detailed account of the advice she provided Movant regarding the § 924(c) charge, and demonstrates that she accurately identified and summarized the legal issues for Movant. In addition, even though Movant confessed to dealing crack cocaine, defense counsel was still able to negotiate a favorable plea which reduced Movant's mandatory minimum imprisonment time from a total of fifteen years to a total of ten years. Given these circumstances, the Court concludes that Movant has failed to satisfy either prong of the *Strickland* test. Accordingly, the Court will deny Claim Two as meritless.

12

### 3. Claim Three: Defense Counsel Failed to Assist Movant in Withdrawing his Guilty Plea Prior to Sentencing

In Claim Three, Movant contends that defense counsel was ineffective for failing to assist him in withdrawing his guilty plea prior to sentencing. The record belies Movant's assertion. In her affidavit, defense counsel explains that she met with Movant on June 29, 2010 to discuss the benefits and risks of filing a motion to withdraw his plea. (D.I. 62-1 at 5-6) Defense counsel told Movant that it was his decision whether to file a motion to withdraw his guilty plea. Following the conversation, Movant informed defense counsel that he still intended to file a motion to withdraw his plea. However, sometime later that same day, Movant called defense counsel's office and informed the Federal Public Defender that he no longer wished to file a motion to withdraw his guilty plea to the § 924(c) charge. (D.I. 62-1 at 6)

Nevertheless, Movant subsequently changed his mind and, on July 6, 2010, he filed a *pro se* motion to withdraw his guilty plea and for the appointment of new counsel. (D.I. 62-1 at 6) Once notified of Movant's motion, defense counsel sent a letter to Movant and inquired if there had been a misunderstanding regarding what he had expressed to the Federal Public Defender about not filing a motion to withdraw his guilty plea. On July 16, 2010, Movant left a voicemail message for defense counsel stating that he no longer wished to file a motion to withdraw his plea and that he wanted defense counsel to remain on his case. Defense counsel met with Movant on July 19, 2010 to discuss the situation. Movant confirmed that he no longer wished to withdraw his guilty plea or to have new counsel appointed. (D.I. 62-1 at 6) Defense counsel then sent a letter informing the Court that Movant no longer wished to withdraw his guilty plea or have new counsel appointed. (D.I. 62-1 at 6; D.I. 39)

13

Given this record, Movant cannot demonstrate that defense counsel's "failure" to file a motion to withdraw his guilty plea amounted to deficient performance or that he was prejudiced by counsel's actions. Accordingly, the Court will deny Claim Three.

### B. Claim Four: Re-sentencing Required Pursuant To The FSA

The Fair Sentencing Act of 2010 ("FSA") increased the threshold amount of crack cocaine necessary to trigger the enhanced sentencing provisions set forth in 21 U.S.C. § 841(b). *See* Fair Sentencing Act of 2010, Pub.L. 111-120, § 2, 124 Stat. 2372. Relevant to this case, the FSA amended the sentencing provisions in 21 U.S.C. § 841(b)(1)(B) by raising the amount of crack cocaine required to trigger a five-year mandatory minimum sentence from five grams to twenty-eight grams. The FSA became effective on August 3, 2010, and applies to offenders whose unlawful conduct occurred after its effective date. However, on August 9, 2011, the Third Circuit held that "the FSA requires application of the new mandatory minimum sentencing provisions to all defendants sentenced on or after August 3, 2010, regardless of when the offense conduct occurred." *United States v. Dixon*, 648 F.3d 195, 202-03 (3d Cir. 2011). In 2012, the Supreme Court confirmed *Dixon*'s conclusion by also holding that the FSA's more lenient mandatory minimum sentences apply to defendants who were convicted of crack cocaine offenses prior to the FSA's effective date of August 3, 2010 and were sentenced after that date. *See Dorsey v. United States*, 132 S.Ct. 2321, 2326-35 (2012).

Based on the foregoing, Movant correctly asserts that the FSA applies to his case because he was sentenced on August 24, 2010. However, the Government contends that Movant is not entitled to relief because he defaulted his FSA argument by failing to raise it on appeal, and he has not suffered any actual prejudice as a result of that default. For the following reasons, the Court rejects Movant's argument that he should be resentenced under the FSA.

14

Pursuant to the procedural default doctrine, if a movant fails to raise a claim that could have been presented on direct appeal, that claim is procedurally defaulted and cannot thereafter be reviewed pursuant to 28 U.S.C. § 2255 unless the movant demonstrates cause for the default and prejudice resulting therefrom, or that he is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Frady*, 456 U.S. 152, 165 (1982). To establish cause for his default, a movant must demonstrate that "some objective factor external to the defense impeded counsel's efforts to raise the claim." *United States v. Essig*, 10 F. 3d 968, 979 (3d Cir. 1993), *abrogated on other grounds as explained in United States v. Peppers*, 482 F. App'x 702, 704 n.5 (3d Cir. 2012). To establish prejudice, a movant must show that "the errors at [his] trial . . . worked to [his] actual and substantial disadvantage, infecting [his] entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170. A federal court may excuse a procedural default if a movant establishes his "actual innocence" by presenting new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found [the movant] guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005).

Here, Movant's Memorandum in Support (D.I. 53) and his Reply (D.I. 63) appear to allege that his default should be excused because defense counsel failed to argue on appeal that the FSA's new mandatory minimum sentence applied to his case. However, the FSA did not contain any explicit provision regarding its applicability to defendants like Movant who committed their crimes prior to the FSA's effective date but were sentenced after that date. Additionally, when Movant filed his notice of appeal on September 9, 2010, the Third Circuit and the Supreme Court had not yet determined that the FSA's new mandatory minimum sentences retroactively applied to defendants who committed their offenses prior to the FSA's effective date but were sentenced after its effective date. Up until the time the Supreme Court decided *Dorsey* in 2012, the federal courts of

15

appeals were split over the whether the FSA's mandatory minimums applied to defendants like Movant. *See Dorsey*, 132 S.Ct. at 2330 ("The Courts of Appeals have come to different conclusions as to whether the Fair Sentencing Act's more lenient mandatory minimums apply to offenders whose unlawful conduct took place before, but whose sentencing took place after, the date that Act took effect, namely, August 3, 2010."). Given these circumstances, the Court concludes that defense counsel's failure to argue on direct appeal that the FSA applied to Movant's sentence did not constitute ineffective assistance.[4] *See, e.g., United States v. Grana*, 2002 WL 31078616, at *5

---

[4] Although the Third Circuit and the Supreme Court had not yet ruled on the retroactivity of the FSA's new mandatory minimums, the instant argument was not so novel that it was not reasonably available to be presented on direct appeal. *See Engle v. Isaac*, 456 U.S. 107, 134 (1983). The fact that other defense attorneys had perceived and litigated similar claims at the same time Movant's direct appeal was pending demonstrates that the foundation of the instant FSA claim was available to Movant. *See United States v. Whitfield*, 2010 WL 5387701, at *2 (N.D. Miss. Dec. 21, 2010); *United States v. Douglas*, 746 F. Supp. 2d 220, 231 (D. Me. 2010) ("[A] defendant not yet sentenced on November 1, 2010, is to be sentenced under the amended Guidelines, and the Fair Sentencing Act's altered mandatory minimums apply to such a defendant as well."); *United States v. Watts*, 775 F. Supp. 2d 263, 275 (D. Mass. 2011) (holding that statutory amendments contained in FSA are applicable to defendants who committed their crimes prior to its passage, but were sentenced after August 3, 2010, and citing cases decided as early as October 2010).

The Court acknowledges the "conceptual tension" between the Court's conclusion that the instant claim could have been presented on direct appeal, but that defense counsel's failure to raise this available claim did not amount to ineffective assistance and, therefore, did not constitute cause for his default. *See Parkin v. United States*, 2012 WL 4894704, at *4 (D.N.J. Oct. 15, 2012). The reason "lies in the difference between **should** and **could**. Whether to raise an argument on appeal is often [] a matter of strategy[], but no impediment external to the defense actually prevented the argument from being raised (*i.e.*, could the argument be raised)." *Id.* Here, the claim could have been raised on appeal but, given the lack of conformity and clear guidance regarding the retroactivity of the FSA's mandatory minimums, defense counsel was not ineffective for failing to raise the argument. *See, e.g., United States v. Arnold*, 2000 WL 288242, at *6 n.3 (E.D. Pa. Mar. 20, 2000) ("Counsel may not be found to be ineffective merely because [s]he makes a tactical assessment that based upon the current legal climate, a particular claim is not worth pursuing.").

Additionally, defense counsel's failure to raise the argument on appeal did not amount to constitutionally ineffective assistance because the failure did not prejudice Movant. As explained in the text of the Opinion, Movant was subject to same five-year mandatory minimum under both pre- and post-FSA law.

16

(E.D.Pa. Sept. 17, 2002) ("[G]iven the unclear state of the law in this Circuit at the time of trial, we can hardly say that counsel's strategic decision was outside the wide range of professionally competent assistance the Constitution guarantees."). Therefore, Movant has failed to demonstrate cause for his default.

Nevertheless, even if Movant were able to demonstrate cause, the Court could not excuse Movant's default and grant relief because he did not suffer any actual prejudice by failing to raise Claim Four on direct appeal. In the context of a guilty plea, an offense element, such as the attributable drug quantity, may be established by an admission by the defendant or by a jury. *See United States v. Booker*, 543 U.S. 220, 244 (2005). Here, although the FSA increased the threshold amount for imposing the five-year mandatory minimum sentence from "five or more grams" of crack cocaine to "twenty-eight or more" grams of crack cocaine, and both the Information and Plea Agreement in this case asserted that Movant possessed "five or more grams" of crack cocaine, Movant's admissions during the plea colloquy and in his Plea Agreement established that he possessed an amount of crack cocaine greater that the FSA's new twenty-eight gram statutory threshold needed to trigger the five-year mandatory minimum sentence. *See United States v. Gil-Delacruz*, 536 F. App'x 193, 197 (3d Cir. Sept. 3, 2013). For instance, during the plea colloquy, Movant explicitly stated that he possessed thirty-five grams of crack cocaine. (D.I. 47 at 8) In Paragraph Four of the Memorandum of Plea Agreement, Movant admitted "that he is responsible for at least 150 grams but less than 500 grams of cocaine base as relevant conduct under U.S.S.G. § 2D1.1(c)(3)." (D.I. 25 at ¶ 4) Finally, during the plea colloquy, Movant validated the veracity of the Government's factual proffer of evidence, which included the blue plastic tub containing 420 grams of crack cocaine that was found on the floor of his bedroom. (D.I. 47 at 10-12) These admissions established that Movant possessed a quantity of crack cocaine ranging from thirty-five grams to 500

grams.[5] As such, even the post-FSA mandatory minimum five-year sentence would apply to his conviction of Count One. *See, e.g., United States v. Gil-Delacruz*, 536 F. App'x 193, 197 (3d Cir. Sept. 3, 2013) (explaining that defendant's admissions in connection with his plea provided sufficient factual basis to support application of FSA's twenty-eight gram threshold for imposing five-year mandatory minimum sentence).

Thus, because Movant would still be subject to the same five-year mandatory minimum sentence he received if he were re-sentenced under the FSA, Movant cannot establish prejudice sufficient to excuse the procedural default of his instant FSA sentencing argument. Accordingly, the Court will deny Claim Four as procedurally defaulted.[6]

## C. Pending Motions

During the pendency of this proceeding, Movant filed two Motions to Appoint Counsel (D.I. 64; D.I. 68) and a Motion to Compel the Court to Immediately Consider his § 2255 Motion (D.I. 67). Having concluded that Movant's § 2255 Motion does not warrant relief, the Court will

---

[5]The Supreme Court's recent decision *Alleyne* held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne v. United States*, 133 S.Ct. 2151, 2155 (2013). However, *Alleyne* does not alter the Court's conclusion that Movant would still be subject to a five-year mandatory minimum sentence if sentenced under the FSA's new statutory scheme. *Alleyne* was decided in 2013, approximately two years after Movant's judgment of conviction became final in 2011, and the Supreme Court has not held that *Alleyne* applies retroactively on collateral review. *See United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014) ("[W]hile *Alleyne* set out a new rule of law, it is not retroactively applicable to cases on collateral review. . ."). Second, even if *Alleyne* could be applied retroactively, *Alleyne* does not prohibit a mandatory minimum sentence based on a defendant's admissions in a plea agreement and/or during the plea colloquy. *See, e.g., United States v. Young*, 2014 WL 764521, at *15 (S.D. Ala. Feb. 25, 2014); *United States v. Yancy*, 725 F.3d 596, 599-600 (6th Cir. 2013) (finding no *Alleyne* violation because defendant entered into plea agreement specifically acknowledging that he "brandished" firearm during commission of armed bank robbery).

[6]The Court does not address the "actual innocence" exception to the procedural default doctrine because Movant does not assert that he is actually innocent of the possession with intent to distribute charge alleged in Count One.

18

deny the pending Motions as moot.

## IV. EVIDENTIARY HEARING

Section 2255 requires a district court to hold a prompt evidentiary hearing unless the "motion and the files and records of the case conclusively show" that the Movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Fed. R. Civ. P. 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that Movant is not entitled to relief. Therefore, the Court will deny Movant's Section 2255 Motion without an evidentiary hearing.

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court is denying Movant's § 2255 Motion after determining that his claims do not warrant relief. The Court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

For all of the foregoing reasons, the Court will dismiss Movant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence without an evidentiary hearing. The Court shall issue an appropriate Order.